Chicago & Eastern Illinois R. R. Co. v. Dora A. Rains, Adm'x.

1. INSTRUCTIONS—*That Plaintiff Need Prove Only One Averment in the Declaration.*—An instruction which tells the jury that it is not incumbent upon the plaintiff to prove more than one of the averments in the declaration, relative to negligence of the defendant. and that if they believe from a preponderance of the evidence that the defendant was negligent in any one of the ways averred in the declaration, then in such case as to that averment they should find for the plaintiff, is proper.

2. SAME—*Where Two Witnesses Testify Directly Opposite to Each Other on a Material Point.*—An instruction that where two witnesses testify directly opposite to each other on a material point the jury is not bound to consider the evidence evenly balanced so far as those two witnesses are concerned, but that they may regard all the surrounding facts and circumstances and other evidence, if any, and give credence to one witness over the other, if they think such facts, circumstances and evidence warrant it, correctly states the law.

3. PRACTICE—*Duty of Court upon Motion for a New Trial.*—After verdict, upon motion for a new trial, it is the duty of the court to pass upon the sufficiency of the evidence to determine whether it justifies the verdict.

**Trespass on the Case.**—Death from negligent act.   Error to the Circuit Court of Franklin County; the Hon. ENOCH E. NEWLIN, Judge presiding.   Heard in this court at the August term, 1902.   Affirmed. Opinion filed March 2, 1903.

W. S. CANTRELL and J. B. MANN, attorneys for plaintiff in error.

WILLIAM H. HART, attorney for defendant in error.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case, in the Circuit Court of Franklin County, by defendant in error against plaintiff in

error, to recover damages resulting from the death of defendant in error's intestate. Trial by jury. Verdict and judgment in favor of defendant in error for $5,000.

The declaration consists of two counts, which as abstracted by counsel for plaintiff in error are as follows:

"First Count. Charges that Rains was a fireman in the employ of defendant, and was firing a locomotive engine, and that defendant furnished for his use and directed him to use an engine that was not safe and not in good repair and of good and safe material, but was unsafe, dangerous, defective, in bad condition, and the boiler of which was unsafe, in bad repair, of unsound and unsafe material, and was old, weak and dangerous, and furnished for use bad, muddy and unfit water for said engine; that Rains had no knowledge of, and by the exercise of ordinary care could not have known of, said unsafe, defective, old and dangerous condition of said engine and boiler, and that said unsafe, dangerous and defective condition of the boiler and of the material therefor and the water furnished and used in the boiler were known to defendant, and by the exercise of ordinary care could have been known to it, and that by reason of the said condition of the boiler and the bad and unfit water used therein the boiler exploded and killed Rains while he was in the discharge of his duty and was exercising due care and caution for his own safety. Alleges survivorship of widow and two children.

"Second Count. Charges the employment of deceased as in first count, and that boiler was in an unsafe, dangerous, old and bad condition; that deceased had no knowledge of such condition and could not have known of it by the exercise of ordinary care, and that it was not his duty to know it; that outwardly the boiler appeared to be in good repair and condition, but in fact its interior parts were covered with sediment and scale, whereby the interior parts and crown-sheet had become burned, damaged, thin, and weak, so that water could not come in contact therewith, and that the sediment and scale had negligently been allowed by defendant to remain and be on said interior parts, so that the fire used in said engine caused the metal and material to become burned, weakened, unsafe and dangerous, and later to explode. Charges that defendant negligently directed and required deceased as fireman to use and operate an engine and boiler which were in bad condition, and the interior parts of which were burned, weakened

and in a bad and defective condition; that it was not the duty of deceased to know of such conditions; that he did not know of them, but that they were known to defendant, and could have been known to it by the use of due care and caution. Charges that while deceased was in the discharge of his duty, and while the engine was in a burned, weakened, defective, dangerous and bad condition, and had not been cleaned, washed out, inspected and made safe and strong, said boiler burst in consequence of its said weakened, defective, bad, old, dangerous, unsafe, neglected, uncleaned, unwashed, uninspected and neglected condition, whereby plaintiff's intestate was killed. Avers survivorship of widow and children, and makes proof of letters of administration."

To this declaration plaintiff in error filed the general issue.

The train was a freight train. The engineer and fireman were both killed by the explosion. The only witness who saw what occurred gives the following account:

"I was on the depot platform at Johnson City, September 25, 1900, when the train passed going north. It is up-grade there for about three-fourths of a mile. The train had stopped at a tank about one-half mile south of where I was standing and had taken water and blown out the boiler. After the train had passed the depot a hundred, or a hundred and fifty yards, the engine blew up. They had taken up one section of the train and were taking up the second when the explosion occurred. Hardin S. Rains was on the engine. I went to the place of the explosion. The engineer was outside the right of way and the fireman was in the cab under the coal. He lived three or four hours. The explosion made a loud noise. As the train passed the depot, the fireman was putting coal into the engine. The water to supply the tank comes from the Williamson County Coal Company mine. By blowing off, I mean blowing out dirty water through the mud valve. The mud valve is down on the side of the engine. I was not close enough to tell whether the engine was blowing out dirty water at the tank, but I knew, from the noise, that it was blowing out. Don't remember whether it blew out before or after it took water."

The evidence as a whole is quite voluminous and pertains mostly to descriptions of the wreck and of the

appearance and condition of the parts, the character of the water in use along the line of the road and of that from which the engine was watered just prior to the explosion, the prior history and condition of the exploded boiler and the care bestowed upon it to keep it in proper condition, and of the opinions of experts as to the cause of the explosion and the reasons upon which their respective opinions were based, as given by them. Counsel for plaintiff in error state the position of the respective parties as contended for upon the trial, as follows:

"There were different theories sought to be established by the respective parties as to the cause of the explosion. On the part of defendant in error it was claimed that the boiler had not been washed with sufficient frequency, or if washed at proper intervals, it had not been thoroughly washed, and that, in consequence thereof, a deposit of carbonate of lime had formed around the bottom of the stay-bolts or radical stays next to the crown-sheet, and that, in consequence of such deposit, the water was prevented from coming in contact with the portions of the crown-sheet surrounding the points where the radical stays passed through and were riveted to the crown-sheet, and that thereby those portions became heated and soft, and allowed the riveted ends of the stays to pull through the crown-sheet; that if the explosion did not occur by reason of the deposits above mentioned, yet the water furnished for use in the engine at Johnson City was of such a nature that the glass gauge on the engine would not correctly register the height of the water in the boiler and that the crown-sheet might have no water over it, while the glass gauge showed a sufficiency of water to cover it.

"The theory of plaintiff in error was that the water in the boiler had been allowed by the engineer to sink below the top of the crown-sheet and that in consequence thereof the crown-sheet had become hot and softened, and either that the pressure of the steam had forced the softened crown-sheet away from the stays with the resultant explosion, or that the water had been injected into the boiler, which came in contact with the super-heated crown-sheet and flashed into steam, causing the explosion."

It will be observed that the theories of the respective parties present only issues of fact. By their general verdict and by their answers to the special interrogatories

submitted to them, the jury resolved these issues of fact against plaintiff in error, and specially found that neither defendant in error's intestate nor the engineer in charge of the engine were guilty of negligence.   In our judgment the evidence fully warrants the jury's verdict and findings.

One of the witnesses who testified on behalf of defendant in error, after having testified that he had examined the boiler and fire box in question by means of a torch in the evening, was allowed, over plaintiff in error's objections, to state that he called the next morning upon the superintendent of motive power of the company at his office and asked permission to examine the boiler by daylight, and that the superintendent, after having telegraphed to the law department of the company, used ungentlemanly language and refused to allow the witness to further examine the boiler.   We are of opinion that the objection to this testimony was not well taken.   It was in our judgment quite proper for the witness to tell the jury what facilities for examination were afforded him, and to explain why he did not make further examination in daylight.   The remark of the witness that the superintendent "indulged in language of no gentleman," was purely incidental and descriptive of the manner of the refusal.   Such matter is usually competent, but in some cases where the manner is that of an agent, not a party to the suit, it is deemed wiser to exclude it.   However, in the case at bar, the remark was not specially objected to, nor was any special motion made to strike it out.   The motion to strike out was as to the whole answer.   We think the admission of this evidence is not such error as warrants a reversal.

Counsel complain of the third, fourth and fifth instructions given on behalf of defendant in error, and of the form of the special interrogatories submitted to the jury.   The third instruction tells the jury that it is not incumbent upon the plaintiff to prove more than one of the averments in her declaration relative to negligence of the defendant, and that if they believe from a preponderance of the evidence that the defendant was negligent in any one of the

ways averred in her declaration, "then in such case, as to that averment," the jury "should find in favor of the plaintiff." The purpose of this instruction was to tell the jury that it was not necessary for the plaintiff to prove all the averments of negligence embraced in her declaration, but that proof of one such would suffice to meet the requirements of that part of her case. It does not direct nor authorize the jury, as counsel contend, that in case of proof of one averment of negligence, together with proof of due care on the part of deceased, and resultant death, they should return a verdict for plaintiff. It does not direct nor authorize the jury to return a verdict for either party upon any condition; it only directs them to resolve such issues as to negligence in favor of plaintiff as they find to be proven by a preponderance of the evidence. Counsel admit that even, as they contend the instruction to mean, "as a general proposition and in most cases it would be proper," but insist that it was not proper in this case. If we should accept counsel's view of its meaning, still we think it would be good and proper in this case; but such views of its meaning is to our minds so clearly wrong that we do not feel called upon to discuss it from that standpoint.

It is contended that the fourth instruction does not limit the jury to pecuniary damages. We do not agree with counsel in this. Every element of damages mentioned in the instruction pertains directly to pecuniary damages.

The fifth is as follows:

"5. The court instructs you that where two witnesses testify directly opposite to each other on a material point, you are not bound to consider the evidence evenly balanced so far as those two witnesses are concerned, but that you may regard all the surrounding facts and circumstances and other evidence, if any, and give credence to one witness over the other, if you think such facts, circumstances and evidence warrant it."

This instruction correctly states the law, as we understand it. In cases of the character of the one at bar this instruction has often been given, and so far as we are advised has always been approved and never condemned.

The form in which the special interrogatories were submitted to the jury is not wholly free from just criticism, but it is apparent that the jury was not misled, and that plaintiff in error was not in any manner damnified thereby.

Counsel complain of the rulings of the trial court in refusing to give certain instructions asked on behalf of plaintiff in error. They especially call our attention to the tenth, twelfth, sixteenth and seventeenth. The tenth and twelfth asked the court to tell the jury that there was no evidence " justifying " them in finding certain facts. There was evidence, and reasonable inferences deducible from evidence, tending to prove the facts in question, and it was not the duty of the court at that stage of the trial, in that state of case, to pass upon the sufficiency of evidence. If there was evidence tending to prove the issues it was the court's duty in the first instance to submit it to the jury; after verdict, upon motion for a new trial, it is the duty of the court to pass upon the sufficiency of evidence to determine whether it justifies the verdict.

The sixteenth and seventeenth were properly refused. All that was proper in either of them is fully embraced in other instructions that were given.

We are of opinion that, upon the whole, substantial justice has been done in this case, and we find no material error in the record.

The judgment of the Circuit Court is affirmed.